# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re:<br><br>MELISSA A. DECEDER,<br><br>Debtor | Chapter 7<br>Case No. 05-42838-HJB |
| MELISSA A. DECEDER,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER<br>EDUCATION ASSISTANCE<br>AGENCY D/B/A AMERICAN<br>EDUCATION SERVICES,<br><br>Defendant,<br><br>EDUCATIONAL CREDIT<br>MANAGEMENT CORP.,<br><br>Defendant- Intervenor. | Adversary Proceeding<br>No. 05-04293 |

## MEMORANDUM OF DECISION

Before the Court is a complaint filed by Melissa A. Deceder (the "Debtor") against the Pennsylvania Higher Education Assistance Agency, d/b/a American Education Services ("PHEAA"). In Count I of her complaint, the Debtor asks this Court to rule that her student loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8). In Count II, the Debtor seeks damages for PHEAA's alleged violations of Massachusetts General Laws chapters 93 and

1

93A. PHEAA and intervening defendant Educational Credit Management Corporation ("ECMC") have each filed motions to dismiss or to abstain, arguing, *inter alia*, that this Court lacks jurisdiction over the claims brought under Massachusetts law. For the reasons set forth below, this Court agrees that Count II of the Debtor's complaint must be dismissed.

I. <u>FACTS AND POSITIONS OF THE PARTIES</u>

The Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code[1] (the "Bankruptcy Code" or the "Code") on April 24, 2005. From the entries on the docket, it appears that the Debtor's case proceeded in a relatively uneventful manner prior to the filing of the instant adversary proceeding.[2] On July 7, 2005, the Chapter 7 Trustee reported that there were no non-exempt assets to distribute to creditors, and, on September 12, 2005, this Court entered an order granting the Debtor's discharge pursuant to 11 U.S.C. § 727. According to the Debtor, however, those intervening months were not without event. She alleges that, during the pendency of her bankruptcy case, PHEAA attempted to collect its debt in a fashion which amounted to unfair and deceptive debt collection practices under Massachusetts law.[3]

---

[1] <u>See</u> 11 U.S.C. §§ 101 <u>et. seq.</u>

[2] This Court may take judicial notice of the documents filed in the Debtor's bankruptcy case. <u>See</u> <u>In re Hyde</u>, 334 B.R. 506, 508-09 n.2 (Bankr. D. Mass 2005).

[3] The material collection activities of PHEAA post-dated the Debtor's discharge. Accordingly, the automatic stay under 11 U.S.C. 362(a) is not implicated. <u>See</u> 11 U.S.C. 362(c)(2)(C). Moreover, the Debtor has expressly disavowed any claim for relief against PHEAA for violation of the automatic stay.

2

The Debtor's contentions are summarized as follows. On May 7, 2005, approximately 2 weeks after the commencement of her bankruptcy case, PHEAA sent a letter to the Debtor, demanding payment of the subject student loan debt.[4] The letter further stated that a "collection fee" would be added to the balance of the debt in the event of default. On May 20, 2005, PHEAA sent a letter to the Debtor's counsel, stating that collection activity would "cease during the pendency of the bankruptcy case." On September 6, 2005, Debtor's counsel sent a letter to PHEAA proposing a settlement of the student loans. In that letter, Debtor's counsel insisted that PHEAA send further communications regarding the loans directly to counsel and not to the Debtor. Thereafter, subsequent to the entry of the Debtor's discharge, PHEAA sent two letters directly to the Debtor, again demanding payment of the student loans. Debtor's counsel responded by letter, dated October 19, 2005, demanding that PHEAA cease direct contact with the Debtor and again seeking a reasonable settlement of the loans. PHEAA did not respond.

On November 2, 2005, the Debtor initiated the present adversary proceeding against PHEAA. In the complaint, the Debtor asks this Court to declare the student loans dischargeable pursuant to 11 U.S.C. § 523(a)(8).[5] Through Count II of the complaint, the

---

[4] The student loan debts were incurred by the Debtor between 1991 and 1995, and were used to help finance her undergraduate education at Pennsylvania State University. The loans were consolidated through PHEAA in February of 1996.

[5]     A debtor under Chapter 7 of the Bankruptcy Code is generally entitled to a discharge of all debts that arose before the filing of the bankruptcy petition. See 11 U.S.C. § 727(a), (b). Student loans, however, are excepted from this general discharge and, without more, a debtor will emerge from bankruptcy with the continued obligation to repay his or her student loans.   See 11 U.S.C. § 523(a)(8). There is, of course, an exception to the exception. Under § 523(a)(8), student loans are excepted from discharge "*unless* excepting such debt from discharge . . .   *will impose an undue*

3

Debtor also seeks damages pursuant to Massachusetts General Laws Chapter 93 and 93A ("chapter 93" or "chapter 93A") for PHEAA's allegedly unfair and deceptive debt collection practices (the "93A claim").[6]

Shortly after the filing of the adversary proceeding, PHEAA assigned its interest in the Debtor's loans to ECMC. ECMC then filed an answer to the complaint and a motion to intervene and be substituted as defendant in the adversary proceeding (the "Motion to Intervene"). The Debtor filed a limited objection to the Motion to Intervene, acknowledging that ECMC was the proper defendant vis-a-vis the dischargeability claim, but asserting that ECMC could not substitute itself as the defendant with regard to the 93A claim. At a hearing held on January 18, 2006, this Court granted the Motion to Intervene in part, allowing ECMC's intervention into the proceeding, but left open the question of whether ECMC would be substituted as the sole defendant.

ECMC and PHEAA subsequently filed motions asking this Court to abstain from hearing the 93A claim or to dismiss the claim on jurisdictional or substantive grounds. In their requests for abstention, they argue that because the 93A claim, in their view, is a non-core proceeding and involves only questions of state law, this Court should exercise its

---

<p style="padding-left: 2em;">*hardship* on the debtor and the debtor's dependents." (emphasis added). 11 U.S.C. § 523(a)(8).</p>

Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks), 331 B.R. 18, 22 (Bankr. D. Mass. 2005). A debtor seeking a declaration that student loan debts are dischargeable under § 523(a)(8) must file an adversary proceeding against the entity holding the student loans. See Fed. R. Bankr. P. 7001(6).

[6] Massachusetts law provides that "unfair deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. ch. 93A, § 2. A creditor may be liable for damages under 93A if the creditor directly contacts a debtor after receiving notification from the debtor's attorney that all further communications relative to the debt should be addressed to the attorney. See M.G.L. ch. 93, § 49(b); M.G.L. ch. 93A, § 2; 940 CMR 7.04(2).

4

discretion to abstain pursuant to 28 U.S.C. 1334(c).[7] In its motion, PHEAA further argues that since the acts complained of occurred entirely post-petition and the recovery of damages, if any, would not be part of the Debtor's bankruptcy estate, the claim is not "related to" the Debtor's bankruptcy case within the meaning of 28 U.S.C. § 157. Thus, PHEAA asserts that this Court lacks subject matter jurisdiction over the 93A claim.

The Debtor, however, argues that the 93A claim *is* related to the Debtor's bankruptcy case, and is a core bankruptcy matter, because the letters were sent while the bankruptcy case was still pending and receipt of the letters has caused the Debtor distress that has further impaired her ability to pay back the student loans. Thus, according to the Debtor, the 93A claim is "inextricably intertwined" with the request for discharge of the loans under § 523(a)(8).[8]

According to ECMC and PHEAA, even if this Court were to rule that it had jurisdiction over the 93A claim and declined to abstain, Count II must be dismissed because chapter 93A does not apply to PHEAA. First, they argue that the provisions of chapter 93A are preempted by federal statutes and regulations which set certain time frames within which student loan guarantor agencies such as PHEAA must contact borrowers regarding payment of student loans. Second, relying on Massachusetts case law, they maintain that as an entity legislatively created and controlled by the

---

[7] Pursuant to 28 U.S.C. 1334(c)(1), this Court may, "in the interest of justice, or in the interest of comity with State courts or respect for State law, . . . abstain[ ] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

[8] The dischargeability determination under § 523(a)(8) is a core bankruptcy matter, see 28 U.S.C. § 157(b)(2)(I), and the parties do not dispute the Court's jurisdiction over Count I. See 28 U.S.C. § 157(b)(1).

Commonwealth of Pennsylvania, chapter 93A does not apply to PHEAA. Because PHEAA was merely performing the duties required by its legislative mandate – namely, assisting in the financing of higher education opportunities – it is not a "person" engaged in "trade or commerce" under chapter 93A.

The Debtor maintains that federal law does not preempt the provisions of chapter 93A. The Debtor contends that federal law merely requires guaranty agencies to undertake a range of "reasonable" collection activities relating to a defaulted loan, and that guaranty agencies are not *required* to directly contact a debtor following a request that communications be sent to counsel. The Debtor also argues that the PHEAA's status as a governmental agency is not dispositive of whether chapter 93A applies. Instead, the Debtor says that the question is whether the acts complained of were perpetrated by the defendant within a "business context." The Debtor contends that PHEAA runs a profitable national student loan business in the same manner as any other for-profit corporation. Thus, PHEAA conducts its affairs in a business context and for a business purpose and engages in "trade or commerce" within the meaning of chapter 93A.

II. DISCUSSION

This Court's first obligation is to determine whether it has jurisdiction over the Debtor's 93A claim. See Csondor v. Weinstein, Treiger & Riley (In re Csondor), 309 B.R. 124, 126-27 (Bankr. E.D. Pa. 2004); Official Comm. of Unsecured Creditors v. Blease (In re Envisonet Computer Servs., Inc.), 276 B.R. 7, 10 (D. Me. 2002); N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.), 221 B.R. 609, 624 (Bankr. D. Mass. 1998) (each cause of action must be separately analyzed to determine whether it falls within the court's

6

jurisdiction) (citing Ralls v. Docktor Pet Ctrs., Inc., 177 B.R. 420, 425 (D. Mass. 1995); Hughes-Bechtol, Inc. v. State of Ohio (In re Hughes-Bechtol, Inc.), 141 B.R. 946, 949 (1992)). Although the parties have filed a Joint Stipulation of Facts, they did not stipulate to the facts underlying the Debtor's 93A claim. Thus, this Court must consider whether "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003).

It bears repeating that the bankruptcy courts are courts of limited jurisdiction, a jurisdiction delineated by Congress in 28 U.S.C. § 1334 ("section 1334" or "§ 1334") and 28 U.S.C. § 157 ("section 157" or "§ 157"). See Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995); Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 105 (1st Cir. 2005); Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 266 B.R. 1, 6 (Bankr. D. Mass. 2001); see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). Section 1334 sets forth the District Court's jurisdiction over bankruptcy matters,[9] and the district court may "refer" bankruptcy matters to the

---

[9] Section 1334 provides, in relevant part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

. . .

11 U.S.C. § 1334(a), (b).

7

bankruptcy courts under § 157.[10] Section 157 also defines the jurisdictional limits of the bankruptcy courts as follows:

> . . .
>
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> . . .
>
> (c)(1) A bankruptcy judge may hear *a proceeding that is not a core proceeding but that is otherwise related to a case under title 11*. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . .[11]
>
> . . .

28 U.S.C. § 157 (emphasis added). In sum, absent a source of jurisdiction other than § 1334, neither the district court nor the bankruptcy court may determine a dispute which is unrelated to a bankruptcy case. However, if the dispute is sufficiently related to the bankruptcy case, jurisdiction is then allocated so that the bankruptcy court (1) has jurisdiction over, and may enter final orders regarding, proceedings that are "core" bankruptcy matters; and (2) has jurisdiction over, but, absent consent of the parties, may not enter final orders regarding, proceedings that are "non-core." Accordingly, this Court

---

[10] The United States District Court for the District of Massachusetts has acted pursuant to § 157(a) and refers bankruptcy matters to the bankruptcy courts. See D. Mass. R. 201.

[11] Under sub-section (2), the bankruptcy judge may enter final orders in non-core proceedings with the consent of all parties. 11 U.S.C. § 157(c)(2). PHEAA has made it clear, however, that it does not consent to the entry of final orders relative to Count II, assuming it is a non-core claim.

8

must first determine whether the 93A claim is related to the bankruptcy case. If not, there is no need to go further.

The First Circuit has described "related to" proceedings as non-core proceedings which

> "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re Smith, 866 F.2d 576, 580 (3d Cir. 1989); 28 U.S.C. 157(c). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).

In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991); see also Celotex, 514 U.S. at 307 n.5; In re Boston Reg'l Med. Ctr., 410 F.3d at 105; In re Middlesex Power Equip., 292 F.3d at 68; Ralls v. Docktor Pet Ctrs., Inc., 177 B.R. 420, 424-25 (D. Mass. 1995); Boyajian v. Deluca (In re Remington Dev. Group, Inc.), 180 B.R. 365, 368-69 (Bankr. D.R.I. 1995) (collecting cases).

Because the Debtor's claim for relief under 93A arose post-petition, it is not property of her bankruptcy estate;[12] any recovery of damages would go to the Debtor and would not be available for distribution under the Bankruptcy Code. This fact weighs heavily against a finding that the claim is "related to" the Debtor's bankruptcy case. See Celotex, 514 U.S. at 308 ("bankruptcy courts have no jurisdiction over proceedings that have no effect on the

---

[12] Although legal claims held by a debtor may be property of the debtor's bankruptcy estate, see Howe v. Richardson, 193 F.3d 60, 61 & n.1 (1st Cir. 1999), the cause of action generally must have existed at the time the petition was filed. See 11 U.S.C. § 541(a)(1) (a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*.") (emphasis added).

9

estate of the debtor."). In a case raising remarkably similar issues, Judge Haines of the United States Bankruptcy Court for the District of Maine found that post-petition claims under the Fair Debt Collections Practices Act and Maine tort law "hold no potential to impact in any way the 'handling and administration of the bankrupt estate,'" Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201 B.R. 1, 5 (Bankr. D. Me. 1996), and were therefore not related to the debtor's bankruptcy estate. Id.; see also In re Csondor, 309 B.R. at 129-30; Close v. Edison (In re Close), 2003 Bankr. LEXIS (Bankr. E.D. Pa. 2003); Vogt v. Dynamic Recovery Servs. (In re Vogt), 257 B.R. 65 (Bankr. D. Colo. 2000). This Court agrees with Judge Haines' analysis and conclusion in Goldstein – in a chapter 7 liquidation, tort claims for violations of state consumer protection laws, arising solely from a creditor's post-petition activities, are simply not related to the debtor's bankruptcy estate. See Celotex, 514 U.S. at 308; Singer v. Adamson (In re Adamson), 334 B.R. 1, 11 (Bankr. D. Mass. 2005); Adams v. Hartconn Assoc., Inc. (In re Adams), 212 B.R. 703, 715 (Bankr. D. Mass. 1997) ("Bankruptcy courts do not have jurisdiction over postpetition matters which are unrelated to the bankruptcy estate.").

The Debtor has argued, however, that the *facts* underlying the 93A claim are relevant to her § 523(a)(8) dischargeability claim, and therefore the two claims are "inextricably intertwined." But a common factual nexus does not, in and of itself, convert an unrelated claim into a related one. See In re Close, 2003 Bankr. LEXIS 1507, *12-13; In re Steele, 258 B.R. at 321; In re Vogt, 257 B.R. at 68. Regardless of the success or failure of the 93A claim, the *outcome of the proceeding* will have absolutely no effect on the Debtor's bankruptcy estate. Whether PHEAA's actions are relevant to the Debtor's

10

request for a determination of nondischargeability under § 523(a)(8) is a matter left for another day.

IV. <u>CONCLUSION</u>

For all the foregoing reasons, this Court concludes that it lacks jurisdiction over the 93A claim and, accordingly, Count II of the complaint is hereby DISMISSED. Furthermore, since the only remaining claim relates solely to the dischargeability of the Debtor's student loans currently held by ECMC, ECMC's request to be substituted as the defendant is GRANTED.

Separate orders in conformity with this memorandum shall issue forthwith.

DATED: August 31, 2006

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

11

# United States Bankruptcy Court
# District of Massachusetts

| | |
|---|---|
| In re:<br><br>MELISSA A. DECEDER,<br><br>Debtor | Chapter 7<br>Case No. 05-42838-HJB |
| MELISSA A. DECEDER,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HIGHER<br>EDUCATION ASSISTANCE<br>AGENCY D/B/A AMERICAN<br>EDUCATION SERVICES,<br><br>Defendant,<br><br>EDUCATIONAL CREDIT<br>MANAGEMENT CORP.,<br><br>Defendant- Intervenor. | Adversary Proceeding<br>No. 05-04293 |

## JUDGMENT OF PARTIAL DISMISSAL

For the reasons stated in this Court's Memorandum of Decision of even date, the motions filed by the Defendant and the Defendant-Intervenor to abstain and dismiss Count II of the Plaintiff's Complaint are granted insofar as the said Count II is DISMISSED.

DATED: August 31, 2006

By the Court,

Henry J. Boroff
United States Bankruptcy Judge